GREAT NATIONAL LIFE INSURANCE COMPANY V. J. A. HULME.

No. 7442. Decided February 14, 1940.
Rehearing overruled March 13, 1940.
(136 S. W., 2d Series, 602.)

540

*Webster Atwell,* of Dallas, for plaintiff in error.

Since application provided that the insurance applied for should not take effect until a written or printed policy should be delivered to and accepted by insured while she was in good health, and since the insured was not in good health at that time, no contract of insurance was consummated. Rockford v. Tschiedel, 61 S. W. (2d) 536; General Life Ins. Co. v. Mathes, 100 S. W. (2d) 1044; Martinez v. First Texas Prud. Ins. Co., 90 S. W. (2d) 645.

*Ray Winder,* of Gainesville, for defendant in error.

Agents soliciting applications for life insurance are the agents of the company and not for the insured, and the company is estopped to assert mistakes of such agents in writing in answers truthfully made by the applicant. San Angelo Life & Acc. Assn. v. Haynes, 106 S. W. (2d) 363; First Texas Pru-

dential Ins. Co. v. Smith, 60 S. W. (2d) 541; Mutual Protective Assn. v. Lee, 65 S. W. (2d) 271

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by the defendant in error, J. A. Hulme, against the plaintiff in error, The Great National Life Insurance Company. Hulme seeks to recover the amount called for by a life insurance policy, which was issued to his wife in her lifetime, by the said Insurance Company. Hulme is named as beneficiary in the policy. The company defends on the ground, among others, that said policy never became effective as a contract of insurance. The case was tried before a jury on special issues, which resulted in a judgment in favor of the Insurance Company. From this judgment, Hulme appealed and the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for him. 116 S. W. (2d) 459. The Insurance Company has been granted the writ of error.

The controlling question is whether or not the policy sued on ever became effective as an insurance contract. The material facts are undisputed. They are substantially as follows:

Jack Bell was the soliciting agent for said Life Insurance Company, but had no authority to make an insurance contract or any other sort of contract. In May, 1935, he took the application of Mrs. Hulme for insurance on her life. Among questions contained in the application which were to be propounded to Mrs. Hulme was one inquiring if she had heart trouble. Printed in the application was the following stipulation, among others:

"That the insurance hereby applied for shall not take effect until a written or printed policy shall have been manually delivered to and accepted by me while I am in good health * * *."

Bell, the soliciting agent, read to Mrs. Hulme the questions contained in the application and wrote in the answers. To the question inquiring whether she had heart trouble, Mrs. Hulme in effect answered "yes." Bell, however, did not write said answer in the application but, without the knowledge of Mrs. Hulme, wrote "No" as the answer. After he completed the filling in of the answers, Mrs. Hulme signed the application without reading it, and therefore did not know that Bell had written a false answer to the question respecting heart trouble. The application was forwarded to the Insurance Company by Bell. A short time later, the policy was issued, with the applica-

tion attached to it as a part of it, and was sent to Bell to be delivered. He delivered the policy and collected the required premium. At the time the policy was delivered by Bell, Mrs. Hulme was afflicted with heart trouble which was a serious menace to the prolongation of her life. This heart trouble caused her death about five months later. Mrs. Hulme never read the policy and her husband did not read it until after she died. Sometime after the policy was delivered, but before Mrs. Hulme died, the company learned for the first time, that Mrs. Hulme was afflicted with heart trouble when she made the application for insurance and at the time the policy was delivered. Upon learning this, the company promptly repudiated all liability under the policy, tendered back the premiums which had been paid, and did not accept any premium after that.

■■ It is to be observed that the application for insurance, which has become a part of the policy sued on, contains a stipulation to the effect that the policy was not to take effect as an insurance contract unless the insured was in good health at the time the policy was delivered.

It is well settled that such a stipulation is valid and prevents the policy from becoming effective as an insurance contract, if the insured, at the time the policy is delivered, is afflicted with a disease or infirmity which increases the risk under the policy. Ins. Co. v. Lawson, 127 S. W. (2d) 294, and cases cited there. The fact is established that at the time this policy was delivered Mrs. Hulme, the insured, was afflicted with heart trouble which constituted such a disease as this stipulation contemplates. For this reason, the policy never became effective as an insurance contract. It is true that Bell, the soliciting agent, in reducing to writing the answers made by the insured to the questions propounded to her, was acting as the agent of the Insurance Company, and therefore the company would not be permitted to say that a false answer which Bell wrote in the application, without the insured's consent, constitutes a misrepresentation made by the insured which avoids the policy. The doctrine upon which this rule rests presupposes that the policy involved has become effective as an insurance contract according to its terms. It can never be employed as a means to charge an insurance company with liability under a policy without the company's consent. Aetna Ins. Co. v. Brannon, 99 Texas 391. Bell had no authority from the company to make an insurance contract, and therefore no agreement made by him, or fraud perpetrated by him, or knowledge possessed by him, can be given effect to modify the good-

health stipulation contained in the policy. Indianapolis Life Ins. Co. v. Powell, 133 Texas 547, 127 S. W. (2d) 172. It cannot be said that the company, in issuing the policy and having Bell to deliver same, consented to modify said stipulation by excepting heart trouble from the scope of its operation. This is so for the reason that in issuing the policy and causing its delivery, the company was ignorant of the fact that Mrs. Hulme had heart trouble, and the company did nothing to signify that it consented to such a modification. In this connection it is noticed that in subdivision 3 of Article 4732 of the Revised Statutes it is provided in effect that the policy and the application attached to it shall constitute the entire contract between the parties. In the present instance there is nothing contained in the policy, or the application attached to it, to indicate that heart trouble is excepted from the scope of operation of the good-health stipulation. In view of the statute just mentioned, we are not certain that such modification as we have discussed above could be read into the stipulation at all. We simply find it unnecessary to reach a conclusion in this respect.

Because, the policy sued on never became effective as an insurance contract, the trial court properly rendered judgment in favor of the company.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court February 14, 1940.

Rehearing overruled March 13, 1940.