## HUGHES v. AMERICAN NAT. INS. CO.
### No. 2074.

Court of Civil Appeals of Texas. Eastland.
Dec. 13, 1940.

Charles W. Hackett, of Texarkana, for appellant.

William V. Brown, of Texarkana, for appellee.

LESLIE, Chief Justice.

James Hughes instituted this suit against the American National Insurance Company to recover on an insurance policy issued to his wife. The trial was before the court and jury and at its conclusion a judgment in favor of the defendant was rendered on motion therefor notwithstanding the verdict. Hughes appeals. The parties will be referred to as in the trial court.

The pleadings and testimony disclose, in substance, that the defendant, on May 2, 1938, issued and delivered the policy to Mary Hughes on her application containing answers to certain questions as follows:

"Question No. 15. Does any physical or mental defect exist? Explain in full on reverse side. Answer: No."

"Question No. 17. From what illness or disease have you suffered during the past five years? State all of them on reverse side hereof, giving date of each. If none, so state. Answer: None."

The application contained warranties and representations as follows: "I hereby apply for insurance for the amount herein stated and I declare and warrant that the answers to the above questions are complete, correct and true to the best of my knowledge and belief. I agree that said answers with this declaration shall form the basis of a contract of insurance between me and the American National Insurance Company and that any policy which may be granted in pursuance of this application shall be accepted subject to the terms, conditions and agreements in said policy."

The policy contained the following provision: "This policy shall be void if the insured is not alive and in sound health on the date hereof" (May 2, 1938). The application contained the stipulation: "I further agree that no obligation * * * shall exist against said company on account of this application * * * unless said company shall issue a policy in pursuance hereof, and the same is delivered to me on the day it bears date, and unless on said date I am alive and in good health * * *." The defendant charged the breach of these warranties and representations.

In answer to special issues the jury found (1) that Mary Hughes was in sound health on the 2nd of May, 1938, and that the "illness of Mary Hughes during the month of April" did not cause or contribute to cause her death on May 17, 1938.

According to the undisputed testimony of Dr. G. U. Jamison who attended her during her last illness, she took sick April 5, 1938, at which time he was called to give her professional attention. He then treated her for "pelvic cellulitis", an "inflammatory condition involving the contents of the pelvic cavity. That is, the * * * organs in the pelvic cavity, including the pelvic peritoneum. The peritoneum is a lining membrane of the abdominal and pelvic cavities. The two cavities are continuous and it is reflected over the organs contained in the abdomen; that is, the stomach and the intestines. That * * pelvic cellulitis is an inflammation of that covering over the organs, as well as the walls of the cavities."

He further testified that from April 5, 1938, to April 24, he paid her three visits, during all of which time he was treating her for said complaint. That approved medical treatment was administered, including "prescribed rest" and "ice bags applied to her lower abdomen." That from April 5 to April 24 she was in bed and during such time she was under his treatment.

In the death certificate issued by this physician he stated that the "immediate cause of death" was intestinal obstruction and that the "contributing cause" was "probably adhesions from old pelvic cellulitis." That the deceased was treated by him "in April, 1938, for pelvic cellulitis." His testimony elucidated and explained the circumstances reflecting the tendency of such illness to produce locked bowels. He stated that such "adhesions * * * is a sort of growing together of the organs with connective tissues that forms as a result of the inflammatory exudate in the cavity. That is where two are inflamed and one touches the other they will grow together." As stated in the death certificate, the doctor testified that the immediate cause of her death was intestinal obstruction, that a "contributing cause of her death" was "probably adhesions from old pelvic cellulitis." That the pelvic cellulitis "contributed to her death."

The plaintiff testified himself that the deceased had locked bowels about April 5 or 9 when the doctor was called to treat her. That she died with that trouble May 18. The doctor was again called either the last of May 17, or in the early part of the 18th.

The application for this insurance was made April 12, 1938. This was about one week after the first attack of April 5 and also after the physician had attended and treated her at least once. The undisputed testimony is to the further effect that the insurance agent handling the transaction only had authority to receive the application for insurance, deliver the policy when issued at the home office, and collect weekly premiums. That such field agents or solicitors "had no authority to pass on applications or to issue policies of insurance." The policy itself provided "agents * * * are not authorized and have no power to make, modify or discharge contracts or to extend the time for payment of any premium, to waive any lapse or forfeiture or any of the company's rights or requirements, or to bind the company by any pomise, written or oral, not contained in this policy."

The materiality of the representations, the company's reliance thereon, and its right to have correct information or true answers to the questions in the application, is so obvious that no discussion of the same is necessary. The insurer is entitled in such cases to the true history of the applicant's prior condition of health, treatments, etc., incident to such illness, as well as the applicant's condition of health at the time it undertakes to issue and deliver a policy. Gonzalez v. Alianza Hispano-Americana, Tex.Civ.App., 112 S.W.2d 802.

It is very certain that the soliciting agent had no authority to bind the company to make insurance contracts, and no agreement made by him without the company's knowledge and consent, or fraud perpetrated by him on the company, would have the effect to modify the stipulation requiring that the insured be in good health and alive when the policy of insurance was delivered. Great Nat. Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602. The undisputed evidence establishes that the deceased was not in good health at the date of the purported delivery of the policy (May 2, 1938). The testimony makes it appear definitely that the alleged policy of insurance was obtained by fraud, and that it was, therefore, void from its inception and never effective or enforcible as a contract. Considering the testimony as a whole, reasonable minds cannot differ on these considerations.

The law applicable to the facts is stated and applied in numerous author-ities, among them, American Nat. Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294; Great Nat. Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602; Gonzalez v. Alianza Hispano-Americana, Tex.Civ.App., 112 S.W.2d 802; First Texas Prudential Ins. Co. v. Pedigo, Tex.Com.App., 50 S.W.2d 1091; Indianapolis Life Ins. Co. v. Powell, 133 Tex. 547, 127 S.W.2d 172. These authorities are to the effect that a provision in a life insurance policy that it shall not take effect unless the insured is in sound health at date of policy is valid and enforcible whether or not the insured knew the condition of her health. They further hold that compliance with the stipulation in a life policy that no obligation is assumed by the insurer unless the insured be alive and in sound health at the date of the purported policy is a condition precedent to the policy's becoming effective. This bears directly upon the facts and issues of the instant case, and an application to them of the rules of law stated in these authorities sustains the action of the trial court in rendering a judgment notwithstanding the verdict.

The judgment of the trial court is affirmed.