### RELIABLE LIFE INS. CO. v. WYATT et al.

#### No. 11252.

Court of Civil Appeals of Texas. Galveston.

July 10, 1941.

Rehearing Denied Oct. 2, 1941.

Battaile & Burr, of Houston, for appellant.

Morris Pepper, of Houston, for appellees.

GRAVES, Justice.

This general statement by the appellant is admitted by the appellee to be correct:

"This suit was instituted by the appellees in the County Court at Law of Harris County, Texas, to recover $208.00, being the benefits provided by a certain policy of life insurance issued by the appellant upon the life of Abe Wyatt, the son of the appellee, Roxie Lee Wyatt. The application was dated January 11, 1938. The policy of insurance itself was issued on January 24, 1938.

"On May 6, 1938, the insured, Abe Wyatt, a boy nineteen (19) years of age, died. The immediate cause of death was 'meningitis, cause unknown'. Bronchial pneumonia was given in the death certificate as a contributing cause. Proofs of death were forthwith made, and the Company denied

any liability to the beneficiary, except for the return of the premiums paid, which it tendered.

"Seeking to take advantage of the two-year incontestable clause, which was a part of the policy, no suit was filed by appellees until more than two years had elapsed from the date of the policy, same being instituted in June of 1940.

"In answer, the Insurance Company alleged that in the application, as well as in the policy subsequently delivered, it was specifically stipulated and agreed that no obligation was assumed by the Company under the policy of insurance, unless the same was delivered to the insured while in sound health, and alleged that, at the date the policy was delivered to the insured, he was not in sound health, but was then and there suffering with consumption.

"Further, that the insured had falsely represented to the Company that he was in good health; that he had not had any serious illness; and that he had never had consumption. But in truth and in fact, at the very time of the application, he was suffering with pulmonary tuberculosis, having been so advised by his physician, in an advanced stage, and that such fact was well known to the insured, as well as to his mother, the beneficiary.

"Anticipating that the appellees would invoke the two-year incontestable clause, the Insurance Company, in addition to the foregoing defense, namely, that no binding contract of insurance was effected between the parties because of the failure of the condition precedent (sound health), by way of cross-action, in the event the plaintiffs were allowed to recover on the policy, sought to recover in tort for the fraud and deceit of the insured, practiced upon the Company in obtaining the insurance, such damages as were sustained by it by reason of the issuance of said policy.

"Trial was had before the Court without a jury upon a stipulated statement of facts, in which it was agreed: that the insured was not in sound health when he applied for the insurance, or when the policy was delivered to him; that he knew he was not in sound health, having been previously advised that he had pulmonary tuberculosis in an advanced stage; that the inquiries made in the application for insurance as to his state of health and the misrepresentations of the insured were material to the risk, and were intended to induce, and did induce, the Company to issue the policy in

suit; that if the Company had known the insured was suffering from pulmonary tuberculosis, the policy would never have been issued or delivered.

"The trial court entered judgment in behalf of the plaintiffs for the face amount of the policy, plus attorney's fees, and the penalties provided by statute, holding that two years having elapsed between the date of the issuance of the policy and the filing of the plaintiffs' suit, the incontestable clause in the contract was a bar both to the defenses urged by the defendant, Insurance Company, to the plaintiff's cause of action and to the cross-action of the defendant, Insurance Company."

These additional details likewise undisputedly appeared:

"The defendant did not file any affirmative defense to this suit until September 13, 1940, setting up then for the first time the misrepresentations by the insured, and also that the insured was not in sound health at the time the policy was delivered to the insured.

"The trial court in its decree held, since this suit was instituted upon the policy of insurance more than two years after the date of the issuance, and that the defendant did not file any affirmative defense thereto until September 13, 1940, that the policy of insurance was incontestable, and that plaintiffs were entitled to recover, and that the defendant could not defeat recovery by virtue of the defenses and affirmative matters set forth in its amended answer, or by virtue of its cross-action."

In this court the Insurance Company inveighs, through five propositions of law, against the two stated holdings of the trial court, towit:

(1) That the suit thereon having been filed over two years after the date of the policy of insurance and the Company not having filed any affirmative defense thereto until some three months subsequent to such filing, the policy had become incontestable, entitling appellees to a recovery;

(2) That such right of recovery, under the undisputed facts, had so become absolute under R.S.Article 4732, Subdivision 3, hence the Company could not defeat it on the claim that the policy had been procured from it by the misrepresentations of the insured, set up in its cross-action.

Its indictment of the first holding, grounded upon its relied-upon authorities as cited supra, is thus summarized in its brief:

"The foregoing provisions of the application and the policy itself are conditions precedent to the effectiveness, indeed, the very existence, of a contract of insurance. By the language used, the applicant for the policy in suit and the Company to which he applies for insurance in effect say: 'If I am not in sound health there isn't any agreement or contract between us.' Nothing more can be made of it. 'That state of health, sound health, must exist when the contract is delivered to consummate our contract, to make it binding.' So the parties have declared their intent.

"That this condition, 'sound health', is a condition precedent to the existence of a contract of insurance, is well supported by a consistent line of Texas authorities, as follows: Hughes v. American National Ins. Co. [Tex.Civ.App.] 146 S.W.2d 470; Great National Life Ins. Co. v. Hulme [134 Tex. 539] 136 S.W.2d 602; American National Ins. Co. v. Lawson [133 Tex. 146] 127 S.W. 2d 294; American National Ins. Co., v. Melton [Tex.Civ.App.] 29 S.W.2d 795; Ofield v. National Ben. Life Ins. Co. [Tex.Civ. App.] 293 S.W. 271; Wright v. Federal Life Ins. Co. [Tex.Com.App.] 248 S.W. 325; Logan v. Texas Mutual Life Ins. Ass'n [121 Tex. 603] 51 S.W.2d 288; Atlanta Life [Ins. Co.] v. Cormier [Tex.Civ. App.] 88 S.W.2d 511.

"If this policy of insurance never became effective as a contract, if it remained executory, uncompleted in the light of the condition precedent mutually agreed upon and imposed by the parties attempting to contract, there is no contract. The incontestable clause reposing in the uneffected contract, there is then no incontestable clause available to appellees."

In attacking the second one, which, as its brief recites, "is more or less in the alternative", it asserts that, "if the incontestable clause in a contract, which never became effective as an operative obligation, may be looked to in making such inoperative and ineffective contract binding and enforceable, then appellant invokes a well recognized principle of contract law, and asks judgment over and against the appellees for whatever amount they may recover on the policy", citing in support these authorities: 20 Texas Jurisprudence, 117, "Fraud and Deceit"; Kansas Life Ins. Co. v. First Bank of Truscott, Tex.Civ.App., 47 S.W.2d 675.

After careful consideration of the cause under the briefs and arguments, both written and oral, for both sides, this court concludes that none of appellant's cited authorities support either of its positions, upon analogous facts to these, and instead, agrees fully with the answering position thus stated by the appellees:

■ "There is but one point and issue involved in this cause, and that is: Does the incontestable clause (Article 4732, Subdivision 3) apply to a condition contained in a policy that the insured must be in sound health at the date of delivery of the policy, where the insurer does not set up such defense until after two years have elapsed from date of issuance of the policy", and that these Texas authorities foreclose the question so posed in their favor: American National Insurance Co. v. Welsh, Tex.Com.App., 22 S.W.2d 1063; Mutual Life Insurance Co. of New York v. Hurni Packing Co., 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; American National Ins. Co. v. Melton, Tex.Civ.App., 29 S.W.2d 795; Atlanta Life Ins. Co. v. Cormier, 126 Tex. 179, 85 S.W.2d 1045; Kansas Life Ins. Co. v. First Bank of Truscott, 124 Tex. 409, 78 S.W.2d 584; American National Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294.

■■ As a corollary, it is further held that, by necessary implication from Subdivision 3 of Article 4732 itself, as so construed by our Supreme Court in American National Insurance Company v. Welsh, supra, and the holdings upon which that construction was based, there was, under the distinctive facts here, no right of action in the appellant for any such claims for damages to itself arising out of the alleged fraudulent procurement of this policy so, declared to have happened more than two years before the suit itself was filed; in other words, that is the rationale of the decision in the Welsh case, as this court understands it, that the legislative intent in enacting Article 4732 was to flatly declare the public policy of the State to be to unconditionally compel, in a state of facts like this, an Insurance Company to pay the proceeds of its policy after such lapse of two years from the date of its issuance, regardless of what may have happened prior to that period of time with reference to whether or not it had been then induced to issue the policy through misrepresentations.

It would serve no needful purpose to further extend this discussion, or to attempt to add anything to what is here understood to

have been so declared by the Supreme Court to be the law upon a state of facts not deemed by this court to be in any material respect different from those here obtaining; indeed, this court is unable to in anywise distinguish the one controlling question in the Welsh case from the single and precise one presented here, wherefore it holds that the effect of that declaration of the law was to preclude this appellant from any recovery, upon either of its claims.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.