Elzie B. MARSHALL, Appellant,

v.

BANKERS LIFE & CASUALTY COMPANY, Appellee.

No. 15226.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Feb. 22, 1968.

Rehearing Denied March 14, 1968.

John H. Holloway, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, David J. Beck, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover the proceeds of a policy of insurance. The appeal is taken from a summary judgment for the Insurance Company.

Appellant alleged in his petition that at the time he received permanently disabling injuries he was insured against disability caused by accident by a preliminary contract of insurance for a one month term as evidenced by a receipt in writing issued to him by the agent of appellee. In the alternative, he alleged that he contracted with appellee to purchase a policy of such insurance against accidental injuries and for a separate consideration appellee agreed to afford immediate coverage until such time as the written policy was issued. He alleged that the written policy was issued, but that while the temporary coverage was in force and before the written policy was delivered, he suffered accidental injuries for which benefits were due under the policy. He alleged that the Insurance Company has refused to pay the benefits due to him and has denied the existence of the contract. Appellant has sued under the theory of anticipatory breach of contract for the benefits due and to become due under the alleged contract.

Appellee filed its motion for summary judgment and an affidavit setting out the fact that appellant made an application for insurance, a true copy of which was attached, and that the insurance policy was not issued on or prior to December 4, 1965, and was not delivered to appellant on or prior to that date. The application attached was dated December 1, 1965. Material parts of the application read:

TO BANKERS LIFE AND CASUALTY COMPANY, Chicago, Illinois 60630 (hereinafter called the Company)

1. I hereby apply for a policy on Form No. P–16, with Rider Form No's. _____ , _____ , _____ , to be issued on the basis of my answers to the following questions and my answers to the Medical Examiner on Part II hereof, if any.

 \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

14. Do you understand and agree that the Policy hereby applied for will not take effect until it is issued by the Company and duly executed by the President and Secretary of the Company and that the Company is not bound by any knowledge of, or statements made by, or to any agent, unless set forth herein? .................. <u>yes</u>

15. \* \* \*.

16. Do you understand and agree that no monthly benefit is payable during the first _0_ days of disability due to accident and during the first _0_ days of disability due to sickness? ............. <u>Yes</u>

I have paid a total of $ _15.75_ with this application for the initial premium to insure me for _ONE (1)_ months.

I hereby witness the signature of the applicant hereon and I certify that I asked him all of the questions herein contained and that there has been recorded hereinabove truly and accurately all of the information supplied by the applicant.

Dated at <u>Houston, Texas</u>
17. this ___1st___ day of <u>December</u> <u>1965</u>
x  E. B. Marshall
Signature of Applicant

_/s/  W. L. Beckham_ ___No. 58194
Licensed Resident Agent

I have read the EXCEPTIONS or EXCLUSIONS in policy form _P–16_ for which I have currently applied. I understand that these are limitations on benefits under the policy.

I also understand and agree that accidents incurred before date of issue of the policy by the Company or illnesses having their inception less than thirty days from said date of issue ARE NOT INSURED.

I have read the completed application signed by me and the statements contained therein as to past illnesses and present condition of health are full, true and correct.

_/s/_   X   E. B. Marshall

1101 Kern, Houston, Texas

Attached to appellant's reply to defendant's motion for summary judgment is appellant's affidavit, a copy of the "Receipt for Initial Premium," a letter from an attorney for appellee, and a copy of the policy of insurance issued by appellee showing date of issue as December 14, 1965.

In his affidavit, appellant states that on December 1, 1965, W. L. Beckham "talked me" into purchasing a life policy for accidental death which included loss of time from sickness and accidental injuries. In his affidavit appellant said:

On December 1st, 1965, Mr. Beckham took $15.75 of my money after taking an application for accidental injury benefits for insurance which was to take effect immediately that date upon his receipt of the premium of $15.75, and by which I was to be paid $150.00 per month for 24 months if acciden*tly* injured and was unable to work, plus $3,000 if killed. He assured me that the insurance was immediately in effect if the $15.75 was paid, and that he would indicate that fact on the application and give me a receipt. That he marked on the application that I was to have one month insurance for the $15.75, and told that the monthly renewal premium would be $9.75 per month as was indicated, and that I would receive the written policy within about 10 days. However, he told me that there was no problems about the company accepting it because no physical examination was required since it covered only accidental injuries,

and that the insurance went into force immediately upon payment of the $15.75 which was to cover one month. He wrote me a receipt for the $15.75, a copy of which is attached and which is true and correct copy.

He later delivered the policy in written form, which contained the application that I had made, but in the meantime I received accidental injury to my right knee which required the removal of the knee cap and I was off work and entitled to the benefits afforded by the policy for $150.00 each month that I was off work, and I still have not returned to all of the duties which I could do before I was hurt, and the policy, both oral and written, covered 24 months.

Mr. Beck*man* was notified of my injury and fact that I was in the hospital before the policy was issued in written form, and the policy was later delivered and showed a issue date of December 14, 1965, and when asked about the date of it he said that date did not matter since I was covered from the date of the application, and that was one of the reasons why the company charged more for one months insurance on a temporary basis, and for me to submit the claim to the company. I submitted the claim to the company and they declined to pay the claim, stating that there was no temporary insurance based on the fact that they had not issued the written policy.

The receipt referred to reads:

BANKERS LIFE & CASUALTY COMPANY

Home Office: *Chicago Illinois 60630*

RECEIPT FOR INITIAL PREMIUM

Received from  Mrs. Marshall  (applicant) an application for a Policy of insurance, and  $ 15.75,  (the initial premium exceeds subsequent premiums by $ 6.00) to pay premiums on the policy for _____ months from its date of issue. In the event the application is declined the above amount will be refunded. No other obligation is incurred by the Company unless said application is approved by the Company at its Home Office and a policy is *issued and executed by its President and Secretary.*

Date  Dec. 1 – 1965          /s/  W. L. Beckham          58194
                          Representative          Number

The policy of insurance issued provides:

BANKERS LIFE
AND
CASUALTY COMPANY

Home Office at
4444 Lawrence Avenue
Chicago, Illinois 60630

A Legal Reserve Stock Company, Hereinafter called the Company Does Hereby Insure the person named as the Insured in the Schedule on the fourth page hereof, subject to the provisions and exceptions hereinafter contained, against loss of life, limb, sight, or time resulting directly and independently of all other causes from injuries, and against loss of time by sickness.

"Injuries" as used in the policy means accidental body injuries sustained and causing loss beginning while this policy is in force.

"Sickness" as used in this policy means sickness, illness, or disease, which is contracted, and begins and causes loss beginning while this policy is in force, and after it has been in force for not less than thirty days from its date of issue.

This policy is issued in consideration of the application herefor, copy of which is attached hereto and made a part hereof and of the payment in advance of the total initial premium set out in the Schedule on the fourth page hereof which shall maintain the policy in force until the first renewal date. It may be renewed with the consent of the Company by the payment of the total monthly renewal premium on said first renewal date and on the same day of each month thereafter subject to the same conditions.

The term of this policy begins at 12 o'clock noon, standard time, at the residence of the Insured on the date of issue and ends at 12 o'clock noon on the date any renewal premium is due, subject to the grace period hereinafter provided.

The benefits and provisions stated by the Company on the following pages are expressly made a part of this policy.

\* · \* \* \* \* \*

ENTIRE CONTRACT; CHANGES: This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

In addition to a recitation that the date of issue is 12 14 65, the policy recites that the total initial premium is $15.75; the first renewal date is 1 14 66; and the total monthly renewal premium is $9.75.

Article 3.70–2, Insurance Code, V.A.T.S., provides:

(A) No policy of accident and sickness insurance shall be delivered or issued for delivery to any person in this state unless:

(1) the entire money and other consideration therefor are expressed therein or in the application, if it is made a part of the policy; and

(2) the time at which the insurance takes effect and terminates is expressed therein; and

\* \* \* \* \* \*

Article 3.70–3, Insurance Code, provides:

(A) Required Provisions. \* \* \* each such policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this subsection \* \* \*.

(1) A provision as follows:

"ENTIRE CONTRACT; CHANGES: This policy, including the endorsements

and the attached papers, if any, constitutes the entire contract of insurance. No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions."

In Southland Life Insurance Co. v. Statler, 139 Tex. 496, 163 S.W.2d 623 (Tex. Sup.1942), the Court stated:

Before proceeding further we deem it expedient to announce several well-settled rules of law, which we think must govern the decision of this case:

1. Under the express provisions of Article 5063, R.C.S.1925, any person who solicits applications for life insurance is to be regarded as the agent of the life insurance company, and not as the agent of the applicant; but such soliciting agent has no power to waive, change, or alter any of the terms or conditions of the application or the policy.

2. Under the provisions of Article 4732, R.C.S.1925, no policy of life insurance can be issued or delivered in this State by a life insurance company such as this unless the same contains a provision "That the policy, or policy and application, shall constitute the entire contract between the parties, * * *."

3. The very wording of the above statutes and of many of our other insurance statutes shows plainly that our laws contemplate that all insurance policies issued by companies of this class must be in writing.

4. It is the settled law of this State that under the above statutes a mere soliciting agent of a life insurance company has no power or authority to make any contract on behalf of his company, or to waive the terms of the policy or the application therefor. Indianapolis Life Ins. Co. v. Powell, 133 Tex. 547, 127 S.W.2d 172; Southland Life Ins. Co. v. Lawson, 137 Tex. 399, 153 S.W.

2d 953, 136 A.L.R. 1212; Great Nat'l Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602; Beaty v. Southland Life Ins. Co., Tex.Civ.App., 28 S.W.2d 895; Guarantee Fund Life Ins. Ass'n v. Barclay, Tex.Civ.App., 11 S.W.2d 231. From the very nature of its business, a life insurance company such as this ought to know what insurance risks it has assumed; and any rule of law which would permit a mere soliciting agent of such a company to put in force oral contracts of life insurance would result in intolerable conditions, and make it impossible for such companies to conduct their affairs in accordance with the numerous regulatory statutes of this State.

* * * This letter was shown by MacGregor to Mr. Statler on the occasion when Mr. Statler paid to MacGregor the quarterly premium on a $15,000 policy, which MacGregor orally stated to Mr. Statler would be in effect on that date. Such oral agreement was in violation of the statutes and decisions above cited, and therefore beyond the power of MacGregor to make on behalf of this Company. Mr. Statler was charged with knowledge of the above statutes, as well as with knowledge of the contents of his own application. The letter written by the Company last above referred to did not even remotely authorize MacGregor to bind this Company to an oral life insurance contract, or to waive, alter, or change the terms, conditions, or provisions of Mr. Statler's written application. * * *

While the contract considered in the Statler case was a policy of life insurance, the pertinent laws relied on in that case are substantially the same as those previously quoted applicable to accident and sickness insurance companies, and the reasoning of the Supreme Court in that case is equally applicable in this.

W. L. Beckham signed as a witness to the signature of appellant on the application for insurance executed by appellant. He signed as a licensed resident agent. In

his affidavit, appellant states that W. L. Beckham represented himself to be an authorized agent of the Company, and that he had previously sold appellant several policies of insurance, and that on each occasion "he receipted for money and the policy was then later delivered." Appellant also stated that Beckham told him that he would get the policy in about ten days since there was "no problem about the Company accepting it * * *"

It is specifically provided in the application that the Company is not bound by any statement made by the agent unless contained in the application, and both the application and receipt contain statements to the effect that the policy applied for would not take effect until issued by the Company and executed by the president and secretary. The application specifically provided that accidents incurred before the date of issue of the policy by the Company are not insured. The receipt provided that in the event the application was declined the entire initial premium would be refunded, and that no other obligation is incurred by the Company. Neither the receipt for the initial premium, the policy subsequently issued, nor the application for the policy, contains any reference to temporary insurance. Appellant points to the statement in the application reading: "I have paid a total of $15.75 with this application for the initial premium to insure me for One (1) months," and contends that this constitutes a memorandum of the oral contract for temporary insurance. We do not agree. When we construe the application and the receipt for the premium together and give effect to all provisions of each instrument, it is clear that the quoted provision refers to the payment of the initial premium due under the policy of insurance for which application was being made. This is the only reasonable construction of the instruments, and it follows that there is no ambiguity in the provisions thereof. Parol evidence to contradict or add to the contract would not have been admissible at the trial of the case on the merits. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30 (1958); Southland Life Ins. Co. v. Gatewood, 135 Tex. 177, 141 S.W.2d 588 (1940); King v. Whatley, 236 S.W.2d 186 (Tex.Civ.App., Eastland 1951, writ ref., n. r. e.).

All of the points of error urged by appellant have been carefully considered, and are denied. Appellant is bound by the terms of the application, receipt for initial premium, and insurance policy. These instruments conclusively negative the existence of a valid agreement for temporary insurance. Southland Life Ins. Co. v. Vela, 217 S.W.2d 660 (Tex.Sup.1949); Mutual Life Ins. Co. of New York v. Anderson, 408 S.W.2d 335 (Tex.Civ.App., Dallas 1966, writ ref., n. r. e.); Debenport v. Great Commonwealth Life Ins. Co., 324 S.W.2d 566 (Tex.Civ.App., Dallas 1959, n. w. h.); Southwestern Life Ins. Co. v. Evans, 262 S.W.2d 512 (Tex.Civ.App., Beaumont 1953, writ ref.).

The judgment of the Trial Court is affirmed.