United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 2, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the FIFTH CIRCUIT**

No. 05-51609

ASSURITY LIFE INSURANCE COMPANY,

Plaintiff-Appellant-Cross-Appellee,

VERSUS

VARSHA GROGAN, individually and as independent
executrix of the estate of J.C. THOMAS GROGAN, deceased,

Defendant-Appellee-Cross-Appellant.

Appeals from the United States District Court
for the Western District of Texas

(1:03-CV-486)

Before BARKSDALE, DeMOSS, and PRADO, Circuit Judges.

DeMOSS, Circuit Judge:

**INTRODUCTION**

Plaintiff-Appellant Assurity Life Insurance Company ("Assurity") appeals the district court's entry of final judgment in favor of Varsha Grogan entitling her to proceeds from her husband's life insurance policy. Assurity argues that, under Texas law, the policy it

issued to Mr. Grogan never took effect because it contains a "good health" condition precedent to its effectiveness; and, Assurity contends, Mr. Grogan was not in good health on the date relevant to the policy's effectiveness. In the alternative, Assurity argues that the policy should be rescinded because Mr. Grogan made material misrepresentations during the application process regarding his general heath and medical history.

Because we find persuasive Assurity's first argument, we need not address its second argument. For the reasons below, we reverse in entirety the district court's judgment in favor of Mrs. Grogan and render judgment in favor of Assurity.

## FACTUAL BACKGROUND

On April 4, 2002, Mr. Grogan submitted to Assurity an application for $1,000,000 of whole life insurance on his own life. For reasons unimportant to this appeal, Mr. Grogan's application did not progress in a timely manner; and in June 2002, Assurity notified Mr. Grogan that his application had been closed. But on August 8, 2002, Mr. Grogan sent to Assurity a letter reaffirming his desire

2

to apply for the policy.

On August 26, 2002, Mr. Grogan faxed to Assurity a new application along with another request to reopen his application. The new application is identical to the first in all material respects. The last page of the application provides the following paragraph in bold:

> **C.  In the event the first full premium on the policy applied for is not paid upon the date of this application, the insurance under such policy shall not take effect unless the application is approved by the Company at its Home Office, such policy issued and delivered to the Proposed Insured/Owner, and such first full premium paid during the Proposed Insured's lifetime and continued good health . . . .**

Assurity issued the policy on August 27, 2002, and mailed it to Mr. Grogan, along with delivery instructions, on August 30, 2002. Mr. Grogan completed the delivery instructions by returning to Assurity a "Delivery Certificate" he had signed and marked as "received September 3."

The Delivery Certificate provides:

> As requested, this policy has been issued without the first premium having been collected with the application.

3

It is hereby certified that there has been no change in the good health of the Insured since the date of the application and it is understood and agreed that the policy shall be effective as of the date of issue only upon payment of the first premium during the lifetime and continued good health of the Insured.

Mr. Grogan paid his first premium on September 6, 2002, and Assurity received the signed Delivery Certificate on September 20, 2002.

On October 7, 2002, Mr. Grogan found out that a lump on his neck, which he had known about for at least a year, most likely was cancerous. On October 24, 2002, he began chemotherapy treatment for Hodgkin's disease. Mr. Grogan died on February 17, 2003, due to complications stemming from chemotherapy treatment for his cancer.

In March 2003, Mrs. Grogan as beneficiary applied for the proceeds from the life insurance policy. However, because Mr. Grogan died during the policy's two-year contestability period, Assurity requested his medical records for the five years preceding his death. After reviewing the records, Assurity determined that Mr. Grogan was not in good health on the date relevant to the policy's effectiveness. Therefore, Assurity refused to

4

pay the proceeds to Mrs. Grogan.

## PROCEDURAL HISTORY

Assurity brought this action seeking a declaration that the life insurance policy never took effect due to the failure of a condition precedent. Mrs. Grogan counterclaimed that Assurity, by refusing to pay the proceeds, breached the terms of the alleged insurance contract. She primarily sought to recover the proceeds under the policy. Additionally, however, she sought attorney's fees and the enforcement against Assurity of a Texas statutory penalty for failure to timely pay proceeds.

The district court held that the insurance policy did take effect and that Mrs. Grogan was entitled to the proceeds. The court also awarded Mrs. Grogan attorney's fees and imposed against Assurity the statutory penalty.

This timely appeal followed.

## DISCUSSION

We review *de novo* a district court's interpretation of an insurance policy. *Riner v. Allstate Life Ins. Co.*, 131 F.3d 530, 533 (5th Cir. 1997). The parties agree that

5

Texas law governs our analysis.

As we noted, Assurity's policy in one part states that "[the policy] shall not take effect unless . . . [the] first full premium [is] paid during the Proposed Insured's lifetime and continued good health . . . ." The policy in another part states that "[the policy] shall be effective as of the date of issue only upon payment of the first premium during the lifetime and continued good health of the Insured."

In short, we do not see how Assurity could have made the policy language much clearer. The policy unambiguously states that in order for it to take effect the insured/proposed insured must make the first premium payment while in good health.

Although the policy's plain language alone makes it sufficiently clear that good health is a condition precedent to effectiveness, we note that this Court and the Texas Supreme Court numerous times have deemed similar language a condition precedent.

In *Beck v. Conn. Gen. Life Ins. Co.*, this Court surveyed Texas law and concluded that the following

6

language qualified as a good health condition precedent: "no insurance shall take effect unless . . . the first premium [is] paid during the lifetime and good health of the proposed insured . . . ." 456 F.2d 1040, 1041 (5th Cir. 1971). The language in *Beck* is virtually identical to the language in Assurity's policy.

Similarly, in *Bryant v. Standard Ins. Co.*, we applied Texas law and concluded that the following language was a condition precedent: "no insurance shall be considered in effect . . . until the first full premium is paid and delivered . . . during the continued good health of the Proposed Insured." 348 F.2d 649, 654 n.6 (5th Cir. 1965). As in *Beck*, the language in *Bryant* is identical in all material respects to the language in Assurity's policy.

In addition, the Texas Supreme Court has deemed similar language a good health condition precedent. For example, in *Great Nat. Life Ins. Co. v. Hulme*, the court addressed whether a life insurance policy ever took effect as an insurance contract. 136 S.W.2d 602, 603 (Tex. 1940). In deciding that the policy was void from inception, the court took as a given that the following

language was a good health condition precedent: "the insurance hereby applied for shall not take effect until . . . delivered to and accepted by me while I am in good health." *Id.* at 603.

We find unavoidable the conclusion that the language in Assurity's life insurance policy is materially indistinguishable from the language in the policies in *Beck*, *Bryant*, and *Hulme*.[1] Therefore, Assurity's policy contains a good health condition precedent to its effectiveness.

Having determined that the policy contained a condition precedent, we turn now to whether the condition was satisfied such that the policy ever took effect. For the reasons below, we conclude that Mr. Grogan did not

---

[1]On the other hand, the language in Assurity's policy is materially distinguishable from policies that Texas courts have found did not contain conditions precedent. For example, in *Protective Life Ins. Co. v. Russell*, a Texas appellate court held that the following language was not a good health condition precedent: "[n]o insurance will take effect unless . . . (3) there has been no change in health and insurability *from that described in this application . . . .*" 119 S.W.3d 274, 281 (Tex. App.-Tyler 2003, pet. denied) (emphasis added). Assurity's policy, however, contains no such qualifying language. Paragraph C states that good health is a prerequisite to effectiveness. It does not purport to turn on any answers given by the applicant. Therefore, this case is distinguishable from cases like *Russell*.

satisfy the good health condition precedent.

Again, for the policy to take effect, Mr. Grogan was required to be in good health when he paid his first premium. Mr. Grogan paid the premium on September 6, 2002. Therefore, we need only to determine whether he was in good health on that date.

Texas courts have consistently held that a person is not in good health when he or she suffers from a serious illness that continues and eventually causes their death. *See Great Am. Reserve Life Ins. Co. v. Britton*, 406 S.W.2d 901, 905 (Tex. 1966) (citing *Tex. Prudential Ins. Co. v. Dillard*, 307 S.W.2d 242, 247 (Tex. 1957). The record facts stipulated to by the parties at the district court make clear that Mr. Grogan indeed suffered from such an illness when he paid his first premium.

Mr. Grogan ultimately died from complications stemming from chemotherapy administered to combat his cancer. Although Mr. Grogan was not diagnosed with Hodgkin's disease until October 2002, the record reveals that he had cancer long before his formal diagnosis.

Mr. Grogan possibly had cancer as early as 2000, when

he began seeking medical attention for a sore throat. Over the next year and half, he sought medical attention for a sore throat seven times. In any event, by September 4, 2001, Mr. Grogan had developed and sought medical care for a painful lump on the left side of his neck. Mr. Grogan again sought care for the lump on his neck on August 26, 2002. By that time, the lump was the size of a golf ball. On September 20, 2002, a biopsy was conducted and later showed that the lump on the left side of Mr. Grogan's neck was Hodgkin's lymphoma. Without doubt, Mr. Grogan had cancer prior to September 6, 2002, and therefore was not in good health when he paid his first premium.

In sum, the life insurance policy contained a good health condition precedent to its effectiveness. That condition was not satisfied, and therefore the policy never took effect.

### CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment in favor of Mrs. Grogan and RENDER judgment in favor of Assurity.

10

**REVERSED and RENDERED.**