# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-20288

ACCEPTANCE INDEMNITY INSURANCE COMPANY

Plaintiff-Appellee

v.

MELVIN ALFREDO MALTEZ; ASSOCIATED AUTOMOTIVE INC

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-2222

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

In this declaratory-judgment action, involving the scope of a general-liability insurance policy's coverage, Melvin Maltez, and the insured, Associated Automotive, Inc. (Automotive), appeal the judgment for the insurer, Acceptance Indemnity Insurance Company (Acceptance). Solely at issue is whether the policy issued by Acceptance to Automotive covered an on-the-job injury to Maltez, an employee of Associated Automotive Salvage (Salvage), because, in an underlying Texas state-court trial on Maltez' negligence claim, Automotive and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Salvage were held to be jointly and severally liable as a "single business enterprise". AFFIRMED.

I.

Automotive operates an automobile-repair shop in Houston, Texas. In May 2003, its owners sold Automotive's salvage operations to their son. He operated that business as Salvage, renting a portion of Automotive's premises and sharing administrative operations with Automotive.

Around the time of Automotive's sale of its salvage operations to Salvage, Automotive purchased a Commercial Auto Coverage Part-Garage Policy from Acceptance, effective for one year, beginning 3 July 2003. That policy required Acceptance, *inter alia*, to defend Automotive in any action involving a covered claim.

In August 2003, Maltez, as an employee of Salvage, was injured on the job while attempting with a torch to remove part of a vehicle. In Texas state court, Maltez sought recovery against both Salvage and Automotive.

After Maltez filed his state-court action, Acceptance filed this federal declaratory-judgment action, claiming it neither had to defend nor indemnify Automotive, based on its assertion that Maltez' claim fell outside the scope of the policy's coverage. The district court ruled that Acceptance had a duty to defend Automotive in the underlying state-court action; on the other hand, the court stayed ruling on the indemnity issue, pending resolution of that action.

Maltez received a $150,000 judgment for his state-court negligence claim. Concerning liability, the jury found that Automotive and Salvage formed a single business enterprise; and, therefore, Automotive and Salvage were held jointly and severally liable.

Automotive requested that Acceptance appeal the judgment, contending there was legally insufficient evidence to support the joint-enterprise finding.

Acceptance chose not to appeal; Automotive did not do so; and the state-court decision became final.

Therefore, Automotive sought indemnification from Acceptance. In response, in this declaratory-judgment action, Acceptance moved for summary judgment, again contending it had no duty to indemnify Automotive.

The general-liability policy provided that Acceptance would "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies caused by an 'accident' and resulting from 'garage operations'". Further, "insured" was defined as "you [the named insured, Automotive], your partners . . . , members . . . , 'employees', directors or shareholders but only while acting within the scope of their duties". The policy also had an "employee exclusion" provision, which denied coverage for injuries sustained by "an 'employee' of the 'insured' arising out of and in the course of employment by the 'insured'". Acceptance contended the employee exclusion applied because Maltez was an employee of Automotive or, in the alternative, a dual employee of both Automotive and Salvage.

After considering this and several other summary-judgment motions, the district court conducted a jury trial because the critical legal question–whether Automotive's liability for Maltez' judgment through the single-business-enterprise theory was covered by its insurance policy with Acceptance–turned on unresolved fact issues. After the close of the evidence, the court submitted three interrogatories to the jury: (1) "Was . . . Maltez an employee of [Automotive] when he was injured . . . ?"; (2) "Did . . . Maltez's injury . . . result from 'garage operations' [as defined by the policy]?"; and, (3) "Did . . . Maltez's injury . . . result from the 'garage operations' of [Automotive]?"

The jury found: (1) Maltez was *not* an employee of Automotive; (2) his injury was a result of "garage operations", as defined by the policy; and (3) his injury was a result of Automotive's garage operations. Post-trial, the district

3

court ordered additional briefing on two issues: whether the jury's finding that Maltez was injured while engaged in Automotive's garage operations was supported by the evidence; and, whether the federal-court jury verdict required indemnification by Acceptance of the state-court judgment.

In a 30 April 2008 opinion, the district court answered both questions in the negative. It ruled: (1) there was *no* evidence from which a jury could find that Maltez' injuries resulted from Automotive's garage operations; (2) the policy, however, required only that injuries result from "garage operations" *generally*, not Automotive's specifically; and, (3) nonetheless, Acceptance was not obligated to indemnify Automotive because the policy required that, in order to trigger coverage, the named insured be directly liable for a potentially-covered injury through its own acts or omissions. The district court held that indemnification based solely on the state court's single-business-enterprise finding (rather than negligence by Automotive) was against the language and meaning of the insurance policy, and would both create perverse incentives and contravene public policy. Accordingly, it held, as a matter of law, in favor of Acceptance.

## II.

For this declaratory-judgment action, for which jurisdiction is based on diversity, Texas law applies. *E.g.*, *Canutillo Ind. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). Solely at issue is whether Acceptance is required to indemnify Automotive through Automotive's having been held liable in the underlying state-court action under the single-business-enterprise theory. Along that line, Acceptance's decision not to appeal the state-court judgment does not come into play in this appeal. Defendants did not raise this issue in district court; and, here, in their opening briefs, they mention it only in passing, without specifically contending Acceptance owed Automotive this duty. *See, e.g., United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (noting that

"[i]t is a well-worn principle that the failure to raise an issue on appeal constitutes waiver of that argument"). The post-oral-argument letter briefs required by the panel do *not* alter this issue's being waived for this appeal.

The district court's interpretation of the insurance policy is reviewed *de novo. E.g.*, *Assurity Life Ins. Co. v. Grogan*, 480 F.3d 743, 745 (5th Cir. 2007). Likewise, whether an insurance policy, as written, violates public policy is a question of law, reviewed *de novo. Fidelity & Deposit Co. of Md. v. Conner*, 973 F.2d 1236, 1241 (5th Cir. 1992).

Finally, public-policy considerations are entertained only after first evaluating the policy's language. The Texas Supreme Court has made clear that "a court should not decide the question of public policy without first determining the contractual rights of the parties under the policy". *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 878 (Tex. 1999).

## A.

Under Texas law, it is well settled that the general rules of contract construction apply to the interpretation of insurance policies, *e.g.*, *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003), and that, when construing a contract, a court's primary goal is to give effect to the written expression of the parties' intent, *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). "We must read all parts of the contract together, striving to give meaning to every sentence, clause, and word". *Id.* (internal citation omitted).

If a contract–in this instance, the policy–can be given a definite or certain meaning, it is unambiguous as a matter of law. If, however, the policy is subject to more than one reasonable interpretation, it will be interpreted in the manner that "most favors coverage" for the insured. *Sink*, 107 S.W.3d at 551 (quoting *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)). As such, policy exclusions and limitations are strictly construed against the insurer.

*Canutillo*, 99 F.3d at 701. Along that line, for whether a claim against an insured is covered under a policy, the insured has the burden of proving the claim is covered; the insurer, of proving a policy exclusion constitutes an avoidance of, or an affirmative defense to, coverage. *Id.*

Maltez' and Automotive's (Defendants) position is straight-forward: under the plain meaning of the policy's language, the state-court judgment against Automotive and Salvage and for Maltez is a covered claim; accordingly, Acceptance is required to indemnify Automotive. Under the policy, as noted *supra*, Acceptance agreed to "pay all sums an 'insured' legally must pay as damages because of bodily injury . . . to which this insurance applies caused by an 'accident' and resulting from 'garage operations'". Defendants claim: Automotive is the "insured"; Maltez' "bodily injury" was caused by an "accident" resulting from "garage operations"; and, because Automotive was held jointly and severally liable with Salvage in the state-court action, Automotive "legally must pay" the damages. Moreover, Defendants maintain no policy exclusion precludes coverage: the federal-court jury found that Maltez was *not* an employee of the insured, Automotive; as such, the employee exclusion was *not* implicated.

At first blush, Defendants' contentions are sound. The state trial court found Automotive legally liable for Maltez' judgment. The policy requires Acceptance to indemnify any covered claim Automotive "legally must pay as damages"; therefore, from this perspective, Acceptance must indemnify Automotive.

The district court ruled, however, that the "legally must pay as damages" language unambiguously referred to obligations that were assessed against Automotive due to its own activities or omissions. That reading of the policy's text is questionable, but the effect is consistent with the view we take of the public policy that is involved.

B.

As noted *supra*, once a court has interpreted the language of the contract, it may then ask whether the contract, as written, offends Texas public policy. Because of the nature of this particular issue–specifically, that Automotive was held liable on the state-court judgment solely through the conduit of the now-discredited single-business-enterprise theory, as discussed *infra*–requiring Acceptance to indemnify Automotive would offend public policy.

Absent express direction from the Texas Legislature, whether a promise or agreement is unenforceable on public-policy grounds is determined by weighing the interest in enforcing such agreements against the public-policy interests opposing such enforcement. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 663 (Tex. 2008); *see also* RESTATEMENT (SECOND) OF CONTRACTS, § 178(1) (1981) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms."). In weighing the interest in enforcement, courts examine: "(a) the parties' justified expectations, (b) any forfeiture that would result if the enforcement were denied, and (c) any special public interest in the enforcement of the particular term". RESTATEMENT (SECOND) OF CONTRACTS, § 178(2) (1981). Alternatively, when weighing whether a contract term violates public policy, courts examine, *inter alia*: "(a) the strength of that policy as manifested by legislation or judicial decisions, [and] (b) the likelihood that a refusal to enforce the term will further that policy". RESTATEMENT (SECOND) OF CONTRACTS, § 178(3) (1981).

Again, Automotive is seeking indemnity for Maltez' judgment through Automotive's general liability policy issued by Acceptance; and, the *only* reason Automotive is liable under the judgment is because of the single-business-enterprise theory. There was *no* tortious conduct on its part. The issue, then,

is whether Texas public policy allows the "legally must pay as damages" language to cover claims premised solely on the single-business-enterprise theory, rather than any negligent activity on the part of the insured, Automotive?

1.

This question, of course, necessitates examining the nature of the single business enterprise. The doctrine is an "equitable veil piercing theor[y]". *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 116, 120 (Tex. Ct. App. 2001). Unlike other equitable corporate doctrines, however, such as "alter ego", proof of fraud is not required. *Id.* at 120. Rather, a single business enterprise may be found merely by showing that "corporations are not operated as separate entities but rather integrate their resources to achieve a common business purpose". *Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. Ct. App. 1986), *abrogated by SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008). When a single-business-enterprise finding is made, "each constituent corporation may be held liable for debts incurred in pursuit of that business purpose". *Id.*

Until very recently, although several intermediate Texas state appellate courts had recognized the single business enterprise in one form or another, the Texas Supreme Court had reserved ruling on whether corporations could be held liable for others' obligations just because they were found to be operating as this type of joint entity. *See Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688, 693 (Tex. Ct. App. 2005); *see also S. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 87 (Tex. 2003) ("We need not decide today whether a theory of 'single business enterprise' is a necessary addition to Texas law regarding the theory of alter ego for disregarding corporate structure and the theories of joint venture, joint enterprise, or partnership for imposing joint and several liability.").

Subsequent to the judgment for this action, however, the Texas Supreme Court made that decision in November 2008. Accordingly, although we must still make an "*Erie* guess" for how the Texas Supreme Court would apply the single-business-enterprise doctrine to the instant circumstances, this task is obviously made much easier by that court's very recent opinion disavowing single-business-enterprise liability. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008).

In *SSP Partners*, the Texas Supreme Court held that, for liability purposes, the corporate fiction should be disregarded only "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result". *Id.* at 454. In discrediting the single business enterprise as a form of corporate veil-piercing, it held: "Abuse and injustice are not components of the single business enterprise theory[,] . . . [which] applies to corporations that engage in any sharing of names, offices, accounting, employees, services, and finances". *Id.* The court noted it had "never held corporations liable for each other's obligations merely because of centralized control, mutual purposes, and shared finances", *id.* at 455; accordingly, the single-business-enterprise-liability theory would "not support the imposition of one corporation's obligations on another", *id.* at 456.

As Defendants' note, pursuant to the not-appealed state-court judgment, rendered and made final before the single-business-enterprise theory was discredited, Automotive remains liable on the judgment, indemnification or not. Nonetheless, we cannot agree with its contention that the Texas Supreme Court would countenance insurance coverage premised solely on a theory it has now thoroughly disavowed. When reviewing the above-described factors considered in analyzing whether a contract violates public policy, our conclusion becomes even more certain: that court's decision in *SSP Partners* announced a clear policy against imposing joint liability on corporations that merely have

9

"centralized control, mutual purposes, and shared finances". *Id.* at 455. Our refusal to require Acceptance to indemnify Automotive for Maltez' judgment because Automotive shares the above-described relationship with Salvage will, of course, harmonize with the goals of this policy.

2.

Even absent the Texas Supreme Court's decision in *SSP Partners*, there are several reasons why public policy would preclude requiring indemnification based on this single-business-enterprise theory. Without the benefit of that later-rendered decision, the district court provided an excellent analysis of the problems associated with applying the single-business-enterprise theory in the context of insurance coverage: (1) attempting to transform a sparingly applied—and now defunct—equitable principle of corporate liability into an obligation on the part of an insurance carrier raises serious questions regarding an insurer's assumption of risk; and (2) in this particular case, it effectively shoehorned a worker's compensation policy for Salvage into Automotive's general-liability insurance policy. *See Acceptance Indem. Ins. Co. v. Melvin Maltez*, No. H-04-2222, at 31-33 (S.D. Tex. 30 April 2008). Under Texas law, workers' compensation is a strict statutory and regulatory regime; its administration is "heavily imbued with public policy concerns", *see Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001), *superseded by statute as stated in Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190 (Tex. 2004), and it was expressly excluded from Automotive's general-liability policy.

Essentially for the reasons stated by the district court in its comprehensive analysis on both of these points, we agree wholly with its conclusion that the Defendants' contentions are "an attempt to fit a square peg into a round hole". As stated, an insurer's obligation to indemnify premised solely upon the now-defunct single-business-enterprise theory would offend Texas public policy.

III.

For the foregoing reasons, the judgment is AFFIRMED.