PROTECTIVE LIFE INSURANCE
COMPANY, Appellant,

v.

Peggy Ann RUSSELL, Appellee.

No. 12–02–00018–CV.

Court of Appeals of Texas,
Tyler.

Jan. 31, 2003.

James A. Ellis Jr., Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, for appellant.

B. Prater Monning, III, Monning & Wynne, L.L.P., Dallas, for appellee.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Our opinion of November 27, 2002 is withdrawn, and this opinion is issued to correct a clerical error in the original opinion of the court.

Appellant Protective Life Insurance Company ("PLIC") appeals the trial court's grant of summary judgment and award of damages in favor of Appellee Peggy Ann Russell ("Mrs. Russell"). PLIC presents five issues for review. We modify the trial court's judgment, and affirm as modified.

### BACKGROUND

On September 16 and 24, 1998, James E. Russell signed and submitted to PLIC the two parts of an application for life insurance ("the Application") in order to obtain life insurance coverage for himself. Just above the signature lines on Part II of the Application is a section entitled "Declarations" which states:

I (We) represent that all statements and answers made in all parts of this application are full, complete and true to the best of my knowledge and belief. It is understood and agreed that:

(a) All such statements and answers shall be the basis of any insurance issued.

(b) No agent or medical examiner can make, alter or discharge any contract, accept risks, or waive the Company's rights or requirements.

(c) No insurance shall take effect unless: (1) a policy is delivered to the Owner; (2) the full first premium is paid while the proper insured(s) is (are) alive; and (3) there has been no change in health and insurability from that described in this application. How-

ever, if the premium is paid as set forth in the Temporary Life Insurance Receipt and the Receipt is delivered to the Owner, the terms of Receipt shall apply.

The Application also contained two areas for the applicant to indicate whether the PLIC policy was intended to replace any other existing life insurance policies with any other companies. On Mr. Russell's application, he stated that he was currently insured by a $500,000.00 life insurance policy issued by Chubb Life and directly under that statement, he indicated that he intended for the PLIC policy to replace or change an existing insurance policy. In response to the question, "Within the past 5 years, has any proposed insured had a heart attack, stroke, cancer, heart surgery or any immune disorder?" Mr. Russell answered "no." Mr. Russell signed this application on September 16.

On September 24, the day he signed Part II of the Application, Mr. Russell submitted to a medical examination by PLIC and provided blood and urine samples. In the Application, Mr. Russell disclosed the name and address of his physician, Dr. Wayne Propst, and described the nature of his prior medical conditions and the treatment Dr. Propst rendered for those conditions. PLIC also secured a copy of Mr. Russell's medical records from Dr. Propst prior to issuing the policy in question. This part of the application, signed by both Mr. Russell and a medical examiner for PLIC, asks the following questions, along with others:

Have you ever had, been told you had, or been treated for:

a. Chest pain, pulse irregularity, high blood pressure, rheumatic fever, heart murmur, heart attack, stroke, or other disorder of the heart or circulatory system?

b. Cancer, tumor, or disorders of the lymph glands?

Mr. Russell checked the "yes" box next to question (a) and checked the "no" box next to question (b). On the application, Mr. Russell explained that he had been treated for high blood pressure and was taking medication for that condition. He also explained that every other year, he undergoes a routine physical examination by Dr. Propst. Mr. Russell stated that in his last physical in 1996, an electrocardiogram test was performed, a chest x-ray was taken and blood was drawn for testing. These diagnostic tests showed no abnormalities. PLIC took this information into account and adjusted the amount of the premium to reflect Mr. Russell's pre-existing condition.

In October and November 1998, Mr. Russell sought treatment from Dr. Propst for back pain, nausea and bloating. Dr. Propst performed a series of tests on Mr. Russell and eventually ruled out any fractures. A chest x-ray showed no abnormalities. On November 12, 1998, Dr. Propst ordered an abdominal sonogram, and the results showed a 36 × 33 mm mass in Mr. Russell's liver. Dr. Propst then ordered an abdominal CT scan that disclosed "multiple rounded low densities" in Mr. Russell's liver that "have the quite typical appearance of metastases." Dr. Propst, suspecting that Mr. Russell had colon cancer, ordered a colonoscopy. The colonoscopy was negative for colon cancer. Dr. Propst then referred Mr. Russell to an oncologist, Dr. Robert Droder.

On November 11, before Mr. Russell's appointment with Dr. Droder, PLIC wrote a letter to Mr. Russell thanking him "for allowing Protective Life to provide your life insurance coverage." At the same time, PLIC notified Mr. Russell's agent, Jimmy Tallent ("Tallent"), that Mr. Rus-

sell's application had been approved by PLIC.

On November 19, Mr. Russell had his first appointment with Dr. Droder, and Mrs. Russell accompanied her husband to the appointment. After examining Mr. Russell, Dr. Droder made an initial written evaluation of Mr. Russell's condition and explained to Mr. Russell that he had a "probable carcinoma of unknown primary." No biopsy had been performed, but Dr. Droder noted that Mr. Russell was "relatively asymptomatic." Dr. Droder did not tell Mr. Russell on November 19 that he in fact had cancer.

On November 20, Mr. Russell visited Tallent's office. Mr. Russell paid the initial premium and was provided the original policy. He also signed the policy on the signature page, right under the same "Declarations" language used in the PLIC application. Upon receipt of the policy, Mr. Russell did not tell Tallent that he had been told that he possibly had cancer. On November 25, five days after Mr. Russell paid for and received the PLIC policy, Dr. Droder told Mr. Russell that he had cancer.

Mr. Russell died January 27, 1999. On February 11, 1999, Mrs. Russell and Tallent completed and signed one of PLIC's claim forms and on February 12, Tallent mailed the claim form to PLIC. One hundred thirty-seven days later, on June 29, 1999, PLIC denied the claim on the basis that no condition precedent to the effectiveness of the insurance policy had occurred because Mr. Russell's health and insurability changed from the time that he filled out the application (September 16 and 24) and the date he physically obtained the policy (November 20).

Mrs. Russell filed suit on November 6, 2000. PLIC and Mrs. Russell each moved for summary judgment. On October 26, 2001, the trial court denied PLIC's motion for summary judgment and granted Mrs. Russell's motion on her claims for benefits under the policy and damages under article 21.55 of the Texas Insurance Code, plus prejudgment interest and attorney's fees. PLIC filed a motion for new trial and alternatively for modification of the judgment, but its motion for new trial was overruled and the motion to modify was granted only as to the accrual date for article 21.55 damages.

PLIC appeals the judgment, contending that the trial court erred in (1) granting summary judgment in favor of Mrs. Russell for the $500,000.00 life insurance proceeds and in denying PLIC's motion for summary judgment, (2) granting summary judgment in favor of Mrs. Russell for $216,739.72 in damages under article 21.55 of the Texas Insurance Code, (3) improperly calculating the amount of damages to be awarded under article 21.55, if any such damages should be awarded, (4) improperly calculating the amount of prejudgment interest, if any policy proceeds or article 21.55 damages should be awarded, and (5) awarding Mrs. Russell attorney's fees, if no policy proceeds or article 21.55 damages should be awarded.

### PLIC's Liability Under the Policy

In its first issue, PLIC argues that the trial court erred when it ruled that PLIC is liable to Mrs. Russell for the proceeds of the policy.

#### Standard of Review

We review a summary judgment *de novo*. *Vardeman v. Mustang Pipeline Co.*, 51 S.W.3d 308, 311 (Tex.App.-Tyler 2001, pet. denied). Accordingly, when cross-motions for summary judgment are filed, we consider the evidence supporting both motions. *Cedillo v. Gaitan*, 981 S.W.2d 388, 390 (Tex.App.-San Antonio 1998, no pet.). We uphold a Rule 166a(c)

summary judgment only if the summary judgment record establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. TEX.R. CIV. P. 166a(c); *e.g., Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether the summary judgment record establishes the absence of a genuine issue of material fact, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, resolving all doubts in the non-movant's favor. *Id.* Since both parties moved for summary judgment, this court has the authority to (1) affirm the judgment, (2) reverse the judgment and render the judgment that the trial court should have rendered, or (3) reverse the judgment and remand the case to the trial court for further proceedings. *Members Mut. Ins. Co. v. Hermann Hosp.,* 664 S.W.2d 325, 328 (Tex.1984).

### Condition Precedent or Representation?

The crucial issue is whether the language PLIC included in the life insurance policy and application is a condition precedent or a representation about Mr. Russell's condition at the time he obtained possession of the policy.

The language in the application page and the policy at issue states that "[n]o insurance will take effect unless ... (3) there has been no change in health and insurability from that described in this application...." Under a section of the policy entitled "Representations and Contestability," PLIC's policy states that

> [i]n issuing this policy, we rely on all statements made by or for the insured in the application. Legally, these statements are considered to be representations and not warranties, unless fraud is involved. We can contest the validity of this policy or resist a claim for any material misrepresentation of a fact. To

do so, however, the misrepresentation must have been made in the application, or in a supplemental application.

■ This language PLIC included in its policy appears to support a conclusion that the statements in the application are representations and not a condition precedent. Thus, according to PLIC's contract, PLIC could contest or resist a claim under the policy only where there is a material misrepresentation of a fact by an applicant. Nevertheless, PLIC argues that the sentence in the application regarding any change in the "health and insurability" of the insured constitutes a condition precedent. A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 283 (Tex.1998) (citing *Trevino v. Allstate Ins. Co.,* 651 S.W.2d 8, 11 (Tex.App.-Dallas 1983, writ ref'd n.r.e.)). PLIC argues that Mrs. Russell failed to present any evidence to prove that the condition precedent was satisfied; therefore, she is not entitled to recover the policy proceeds.

■ On the other hand, Mrs. Russell contends that Mr. Russell's answers and verification of those answers on the application upon receipt of the policy constitute representations to PLIC. In order to avoid liability under a life insurance policy on the basis of misrepresentation, an insurer must plead and prove (1) the making of the representation, (2) the falsity of the representation, (3) reliance thereon by the insurer, (4) the intent to deceive on the part of the insured in making same, and (5) the materiality of the representation. *Mayes v. Massachusetts Mut. Life Ins. Co.,* 608 S.W.2d 612, 616 (Tex.1980). Mrs. Russell argues that PLIC had the burden to plead and prove a misrepresentation and that PLIC did not meet its burden in raising a

genuine issue of material fact on all of the necessary elements of misrepresentation.

 Where the language of the policy expressly provides that coverage does not take effect unless the applicant is in good health, the good health provision is enforceable as a condition precedent. *American Nat'l Ins. Co. v. Paul*, 927 S.W.2d 239, 243 (Tex.App.-Austin 1996, writ denied). However, where the language in the policy states that the answers in the application are true and correct at the time of delivery of the policy, such a requirement is merely a representation. *Mayes*, 608 S.W.2d at 616. When the language of an insurance policy is susceptible to more than one construction, the insurance policy should be construed in favor of the insured to avoid exclusion of coverage. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987).

Previous cases have held that when a policy contains the language "the policy shall be voidable by the company if on its date of issue the insured is not in sound health" or that "the policy shall become effective on the policy date *if the insured is* then alive and in good health, but not otherwise," such a "good health" provision is a condition precedent. *See Lincoln Income Life Ins. Co. v. Mayberry*, 162 Tex. 492, 493, 347 S.W.2d 598, 599 (1961); *Great Nat'l Life Ins. Co. v. Hulme*, 134 Tex. 539, 540, 136 S.W.2d 602, 603 (1940); *Reliable Life Ins. Co. v. Gray*, 464 S.W.2d 412, 412 (Tex.Civ.App.-Texarkana 1971, writ ref'd n.r.e.). The language in the application page and the policy at issue states that "[n]o insurance will take effect unless ... (3) there has been no change in health and insurability from that described in this application...." The "good health" cases do not condition effectiveness of the policy on any answers given in the application. In contrast, the cases holding that language contained in the policy is a repre-

sentation have based their holdings on the fact that the answers are verified by the insured as being "true and correct" at the time of the delivery of the policy. *See Mayes*, 608 S.W.2d at 616; *Paul*, 927 S.W.2d at 243.

In *Mayes*, the Texas Supreme Court addressed the effect of verified answers in an application for life insurance. Mr. Mayes applied for an insurance policy and underwent a physical examination by the insurer's medical examiner in May of 1976. *Id.* at 614. In the application, Mayes explained that he had undergone a physical in 1974 and denied that he had ever been treated for or had any known indication of any disorder of the heart or experienced any pain, discomfort, or pressure in the chest. The first examination showed that he had an elevated blood pressure, and a re-examination was performed by the insurer's doctor on July 14, 1976. The medical examiner determined that Mayes had not undergone any recent medical or dietary treatment for hypertension, and Mass Mutual issued the policies to Mayes at a higher premium because of the elevated blood pressure. The policies were delivered to Mayes by the agent on August 17, 1976 after Mayes agreed to the higher premium. *Id.* On June 29, 1976, Mayes felt a pain in his chest and went to the doctor. *Id.* at 614–15. The doctor performed a number of tests and concluded that he did not think Mayes had heart disease, but he could not exclude that possibility. *Id.*

Mayes next saw the doctor on July 28, 1976, complaining of two more episodes of chest pain. The doctor performed more tests but was unable to pinpoint the cause of the chest pain. *Id.* Mayes was not diagnosed as suffering from heart disease, but the doctor could not rule it out. Mayes died suddenly from a heart attack on July 25, 1977. *Id.*

Mass Mutual sued, seeking to rescind the policies because Mayes did not disclose that certain answers in his applications which were correct when made had become false by the time the policies were delivered. *Id.* Mayes's wife, the named beneficiary under the policies, counterclaimed for the proceeds of the policies, interest and attorney's fees. The trial court rendered judgment for Mayes's wife on the jury verdict. The court of appeals reversed the judgment of the trial court and remanded the cause with instructions to limit recovery to return of the premiums. *Id.* at 613.

The pertinent language at issue in Mayes' policy stated that

[t]o the best of my (our) knowledge and belief, all answers and statements contained herein are full, complete and true and were correctly recorded before this application was signed; and it is agreed that: (a) if the first premium on the insurance herein applied for has been paid to the Company's agent in exchange for the Company's Conditional Receipt signed by said agent, the Company shall be liable only under and pursuant to the terms and conditions set forth in said receipt; (b) if the first premium on the insurance herein applied for has not been paid, the Company shall incur no liability under this application unless and until the application has been completed and approved and the policy has been issued and delivered to the owner designated therein and the first premium specified in the policy has been paid during the lifetime of each person proposed for insurance *and then only if at the time of said delivery and payment all answers and statements contained in Parts 1 and 2 of this application and any amendments thereof and supplements thereto are then full, complete and true to the best of my (our) knowledge and belief as*

*though given at the time of said delivery and payment; . . . .*

*Id.* at 615 (emphasis added).

The supreme court noted that because the policies did not contain a "good health" provision, the question was whether the requirement that the answers in the application be true and correct at the time of delivery should be considered a condition precedent or a representation. *Id.* at 616. In holding that the requirement is a representation, the court stated that if the answers to the questions in the application were untrue at the time they were given, the untrue answers constituted misrepresentations and there was no logical reason to give the failure to correct these same answers at a later time any greater significance than that given to answers which were originally untrue. *Id.* The court also noted that the insurer knows the length of delay between the completion of the application and the issuance of the policy. "If this period was significant, the insurer could easily ensure that the answers were still correct at the time of issuance of the policy either by putting a good health provision in the application or by requiring a supplemental statement of health." *Id.* Ultimately, the *Mayes* court remanded the case to the court of appeals for the determination of whether the evidence was factually insufficient to support the jury finding that Mayes's failure to disclose the changes in his health was not for the purpose of inducing Mass Mutual to issue the policies. *Id.*

■ The application page and the policy at issue in the case at hand both contain the language that "I (We) represent that all statements and answers made in all parts of this application are full, complete and true to the best of my (our) knowledge and belief." When Mr. Russell went to pick up the policy on November 20 (after

he was told that he "probably" had cancer), he signed the policy again and verified that the answers he previously gave to the questions in the application (denying that anyone had ever told him he had cancer) were "full, complete and true to the best of his knowledge." We hold that by signing the policy and acknowledging that his answers were "full, complete and true," even though he had been told that he probably had cancer, Mr. Russell's acknowledgment that no one had ever told him that he had cancer was a representation. PLIC's contention that Mr. Russell failed to comply with a condition precedent is overruled.

### PLIC's PROOF OF MISREPRESENTATION

■ An insured's failure to advise the insurer of the changes in his prior answers to an insurance application is a misrepresentation, and the burden is on the insurer to prove each element of misrepresentation. *Mayes,* 608 S.W.2d at 616. "If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment." *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

PLIC contends that it raised a fact issue on each element of misrepresentation: (1) the making of the representation, (2) the falsity of the representation, (3) reliance thereon by the insurer, (4) the intent to deceive on the part of the insured in making same, and (5) the materiality of the representation. *Mayes,* 608 S.W.2d at 616.

The record shows that on November 20, the day the insurance took effect, Mr. Russell signed the policy and affirmed that the answers he gave in the application were "full, complete and true to the best of [his] knowledge." Most notably, he represented that he had never had, been told he

had, or been treated for cancer, a tumor, or disorders of the lymph glands. Because Mr. Russell represented to PLIC at the time he took possession of the policy that he did not have cancer, PLIC raised a genuine issue of material fact on the first element.

■ Although Mr. Russell represented to PLIC that he had not been told he had cancer, PLIC has not shown that this representation was false. The record shows that Mr. Russell's first symptoms of possible cancer came on November 12, 1998 in the form of a 36 × 33 mm mass found in Mr. Russell's liver by a sonogram performed on his abdomen. On November 13, an abdominal CT scan showed "multiple rounded low densities" in his liver. Dr. Propst suspected colon cancer, but that was ruled out on November 19. On that same date, Dr. Droder told Mr. Russell that he had a "probable carcinoma of unknown primary," but did not tell him that he in fact had cancer on that day. A confirmed diagnosis was not communicated to Mr. Russell until November 25, five days after the insurance took effect. Therefore, Mr. Russell truthfully represented on the application that he had never had, been told he had, or been treated for cancer. Because PLIC failed to raise a genuine issue of material fact on the falsity of Mr. Russell's representation, the trial court did not err in finding that PLIC was liable to Mrs. Russell for the face amount of the policy.

Even if PLIC had raised a genuine issue of material fact on each element of Mr. Russell's alleged misrepresentation, PLIC's misrepresentation defense would still fail. Article 21.17 of the Texas Insurance Code mandates that an insurer give timely notice of its intention to assert misrepresentation by an insured as a policy defense and that such notice must be given within ninety days after discovering the

falsity of the representations made. TEX. INS.CODE ANN. art. 21.17 (Vernon 1981). However, article 21.35 exempts life insurance policies from this constraint if the policy includes a clause providing that the policy is "indisputable after two years or less, provided premiums are duly paid." TEX. INS.CODE ANN. art. 21.35 (Vernon Supp.2002).

Mrs. Russell argues that article 21.35 is inapplicable to the case at bar because PLIC's policy failed to include the express language required by article 21.35. The incontestability clause PLIC included in the policy stated "[w]e cannot bring any legal action to contest the validity of this policy after it has been in force two years, except for failure to pay premiums, unless fraud is involved." Mrs. Russell contends that this clause is illegal because it purports to reserve a right to assert fraud more than two years after the date of the policy. In support of this argument, Mrs. Russell relies on *American Nat'l Ins. Co. v. Tabor*, 111 Tex. 155, 230 S.W. 397 (1921) and *National Life & Accident. Ins. Co. v. Taree*, 8 S.W.2d 291 (Tex.Civ.App.-El Paso 1928, writ dism'd w.o.j.).

In *Tabor*, the incontestability clause at issue stated "[t]his policy shall be incontestable after two years from its date of issue for the amount due provided premiums have been duly paid, except for fraud." *Tabor*, 230 S.W. at 398. The incontestability clause in *Taree* stated "[a]fter this policy shall be in force for two full years from the date hereof, it shall be incontestable, except for nonpayment of premiums, fraud, or misstatement of age, subject to the restrictions as to military or naval service as contained herein." *Taree*, 8 S.W.2d at 291–92. The *Tabor* and *Taree* courts held that because the statutes provided that an incontestability clause must be absolute, the incontestability clauses in those cases were invalid and ineffective;

therefore, the statute which exempted life insurance companies from providing notice within ninety days was inapplicable.

■ The same rules apply to this case. The incontestability clause PLIC chose to use in its policy was not absolute because it allowed PLIC to contest a claim after two years for fraud; therefore, it was invalid and ineffective. Since PLIC did not comply with the time constraints regarding notice of Mr. Russell's alleged misrepresentation as a defense to the claim, PLIC waived its right to assert misrepresentation as a defense.

### DAMAGES UNDER ARTICLE 21.55 OF THE TEXAS INSURANCE CODE

In its final judgment, the trial court awarded Mrs. Russell the face amount of the policy plus damages under article 21.55 of the Texas Insurance Code in the amount of $216,739.72, which was 18 percent per annum of $500,000.00 calculated from August 11, 1999 to the date of the judgment, January 8, 2002. PLIC argues that the trial court erred in awarding such damages because (1) Mrs. Russell did not expressly state the grounds of her claim for damages under article 21.55, and (2) Mrs. Russell did not prove any violation of article 21.55 by PLIC.

#### Sufficiency of the Grounds of Mrs. Russell's Article 21.55 Damage Claim

In her motion for summary judgment, Mrs. Russell alleged under a heading entitled "Attorneys fees, interest, and statutory damages," that "[a]n insured is entitled to recover, in addition to policy benefits, reasonable attorneys' fees and prejudgment interest," and cited to section 38.001 of the Texas Civil Practice and Remedies Code, article 21.55 of the Texas Insurance Code, and section 302.002 of the Texas Finance Code. Mrs. Russell further argued that "[i]n addition, because PLIC failed promptly to pay Mrs. Russell's

claim, she is entitled to statutory damages equal to 18% per annum," and again cited to article 21.55 of the Texas Insurance Code. PLIC relies on *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) for the proposition that Mrs. Russell's allegations regarding the article 21.55 damages set forth in her motion for summary judgment do not set out the specific elements of such a claim and inadequately state the grounds for a claim for damages under article 21.55.

In *McConnell*, Southside Independent School District ("Southside") filed a motion for summary judgment, arguing in the body of the motion only that

> [t]here are no genuine issues as to any material facts and that these Defendants are entitled to a judgment dismissing Plaintiff's amended complaint as a matter of law. The defendants respectfully request this Court to enter a summary judgment based on the pleadings on file, this Brief in Support (*sic*), containing the undisputed facts and conclusions of law as required by the Local Rules, and transcripts, together with affidavits submitted along with this motion, or in the alternative to specify what, if any, facts remain to be determined.

*Id.* at 339.

Southside also filed a twelve page brief in support of the motion in which it expressly presented the grounds it argued that established its right to summary judgment. *Id.* McConnell filed a written exception to the motion, contending that the motion was defective because it failed to present any grounds. *Id.* The trial court overruled McConnell's objection and rendered summary judgment in Southside's favor. The court of appeals affirmed the trial court's judgment. *Id.*

The Texas Supreme Court reversed, holding that the court of appeals erred in affirming the trial court's judgment be-cause Southside's motion stated no grounds and McConnell properly objected to this defect. *Id.* at 344. The court agreed with McConnell's argument that the "specific grounds for summary judgment must be expressly presented in the motion for summary judgment itself and not in a brief filed contemporaneously with the motion or in the summary judgment evidence" because a "brief in support" of a motion is not a motion, answer, or response as contemplated by Texas Rule of Civil Procedure 166a. *Id.* at 339, 340. The term "grounds" refers to the reasons entitling the movant to summary judgment. *Id.* at 339.

The *McConnell* court also places a burden on the non-movant seeking to avoid a summary judgment. Issues a non-movant contends avoid the movant's entitlement to summary judgment must be expressly presented by written answer to the motion or by other written response to the motion and are not expressly presented by mere reference to summary judgment evidence. *Id.* at 341 (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979)). Furthermore, when the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, any confusion may and should be resolved by exception in the trial court. *McConnell*, 858 S.W.2d at 342.

Section 6 of article 21.55 mandates that (1) if a claim is made pursuant to an insurance policy, (2) the insurer is liable under the policy, and (3) the insurer is not in compliance with the requirements of article 21.55, the insurer shall be liable to pay the beneficiary, in addition to the amount of the claim, 18 percent per annum of the amount of the claim as damages, together with reasonable attorney's fees. TEX. INS.CODE ANN. art. 21.55, § 6 (Vernon

Supp.2002). In the case at hand, Mrs. Russell's motion sufficiently stated the grounds upon which she relied to recover article 21.55 damages. First, it is undisputed that Mrs. Russell has made her claim pursuant to an insurance policy. Second, Mrs. Russell argued in her motion that PLIC was liable for the face value of the policy. Finally, Mrs. Russell argued that because PLIC failed to promptly pay Mrs. Russell's claim, article 21.55 mandates that PLIC pay statutory damages equal to 18 percent per annum on the $500,000.00 policy. Therefore, we hold that Mrs. Russell's motion satisfied the *McConnell* standards for motions for summary judgment.

PLIC's second issue, as it pertains to the sufficiency of the grounds of Mrs. Russell's article 21.55 claim, is overruled.

### Proof of the Article 21.55 Violation

PLIC contends that the trial court erred in awarding damages to Mrs. Russell under article 21.55 because Mrs. Russell's summary judgment evidence failed to prove that PLIC violated article 21.55.

Article 21.55 mandates that an insurer must, not later than the fifteenth day after receipt of notice of a claim (1) acknowledge receipt of the claim, (2) commence any investigation of the claim, and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant. TEX. INS.CODE ANN. art. 21.55, § 2(a) (Vernon Supp.2002). An insurer has a duty to notify a claimant in writing of the acceptance or rejection of a claim no later than the fifteenth business day after the date the insurer receives all items, statements, and forms required by the insurer. TEX. INS.CODE ANN. art. 21.55, § 3(a) (Vernon Supp.2002). If an insurer cannot determine whether it will accept or reject the claim, it must notify the claimant, not later than the fifteenth business

day after the insurer receives all relevant items and must give the reasons the insurer needs additional time. TEX. INS.CODE ANN. art. 21.55, § 3(d). Not later than the forty-fifth day after the date an insurer notifies a claimant that it needs additional time to evaluate the claim, the insurer must reject or accept the claim. TEX. INS. CODE ANN. art. 21.55, § 3(e). Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all necessary items for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than sixty days, the insurer shall pay damages and other items as provided for in section 6 of article 21.55. TEX. INS.CODE ANN. art. 21.55, § 3(g).

■ Section 6 of article 21.55 mandates that (1) if a claim is made pursuant to an insurance policy, (2) the insurer is liable under the policy, and (3) the insurer is not in compliance with the requirements of article 21.55, the insurer shall be liable to pay the beneficiary, in addition to the amount of the claim, 18 percent per annum of the amount of the claim as damages, together with reasonable attorney's fees. TEX. INS.CODE ANN. art. 21.55, § 6; *see also Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex.2001). The payment of the penalty provided for in section 6 of article 21.55 is payable when the insured fails to comply with any of the requirements of article 21.55. *Dunn v. Southern Farm Bureau Casualty Ins. Co.*, 991 S.W.2d 467, 471 (Tex.App.-Tyler 1999, pet. denied); *Mid-Century Ins. Co. v. Barclay*, 880 S.W.2d 807, 811–12 (Tex.App.-Austin 1994, writ denied).

PLIC argues that it should not be liable for any violation of article 21.55 for simply denying a claim. PLIC is correct in that assertion; however, section 8 of article 21.55 states that the article "shall be lib-

erally construed to promote its underlying purpose which is to obtain prompt payment of claims made pursuant to policies of insurance." TEX. INS.CODE. ANN. art. 21.55, § 8. Mrs. Russell has not based her claim on the fact that PLIC did not pay her claim; she sought damages under article 21.55 because of PLIC's failure to process her claim in a timely manner.

■ The evidence in the record demonstrates that Mrs. Russell made her claim pursuant to the PLIC life insurance policy and that PLIC was adjudged to be liable under the policy by the trial court; therefore, the first two elements of Mrs. Russell's article 21.55 claim are satisfied. The evidence also reflects that PLIC failed to notify Mrs. Russell, within 15 business days after the date she turned in all of the documents required by PLIC, whether it would accept, reject, or need additional time to process her claim. The record only shows that PLIC's sole contact with Mrs. Russell was made when PLIC denied her claim by letter dated June 29, 1999, which was 137 days after Mrs. Russell submitted the materials required by PLIC. Accordingly, we hold that Mrs. Russell proved that PLIC violated article 21.55.

■ We must emphasize that PLIC's violation of article 21.55 was not due to its decision to deny Mrs. Russell's claim. Nothing in article 21.55 suggests that an insurance company cannot dispute and deny a claim. *Wellisch v. United Servs. Auto. Assn.*, 75 S.W.3d 53, 57 (Tex.App.-San Antonio 2002, pet. denied). Article 21.55 is premised on the presumption that insurance companies have the right to dispute claims; however, they must do so promptly. *Dunn*, 991 S.W.2d at 474. The decision to deny Mrs. Russell's claim was

within PLIC's discretion; however, PLIC did not have the discretion to delay the claims process in the manner it chose. PLIC's second issue is overruled.

### ACCRUAL OF THE ARTICLE 21.55 DAMAGES

Under article 21.55, damages begin to accrue on the earlier of (1) 180 days after the date the insurer receives written notice of a claim or (2) the date suit was filed. *Dunn*, 991 S.W.2d at 478. In its third issue, PLIC contends that the trial court's final judgment was erroneous because Mrs. Russell did not conclusively prove when PLIC received written notice of her claim.

PLIC provided a "Claimant Statement" for Mrs. Russell to complete in order to make her claim for the policy proceeds. This form was signed by both Mrs. Russell and Tallent and was dated February 11, 1999. In its Motion for Summary Judgment, PLIC admitted that Mrs. Russell submitted her claim for benefits under the policy on February 11. In his deposition, Tallent testified that he mailed Mrs. Russell's claim form to PLIC on February 12, 1999. In its final judgment, the trial court began calculation of the 18 percent damage award on August 11, 1999, 180 days after Mrs. Russell submitted her claim to Tallent. PLIC admitted in its Motion for Summary Judgment that Mrs. Russell submitted her claim to it on February 11, but takes issue over the fact that Mrs. Russell has evidence of the claim being "submitted" by her, instead of the claim being "received" by PLIC. We disagree.

■ Section 21.02 of the Texas Insurance Code lists various acts performed in the ordinary course of providing insurance,[1] and states that any person who per-

---

1. The acts listed include, *inter alia*, soliciting insurance on behalf of an insurance company; transmitting an application or policy to or from the insurance company; receiving, collecting or transmitting an insurance premi-

forms these acts "shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all liabilities, duties, requirements and penalties set forth in this chapter." Tex. Ins.Code Ann. art. 21.02. The evidence is undisputed that Tallent transmitted Mr. Russell's application to PLIC, collected premiums from Mr. Russell, and helped Mrs. Russell submit the claim to PLIC. Therefore, by law, Tallent was PLIC's agent.

■ Notice to an agent, received while the agent is acting within the scope of his authority, constitutes notice to the principal. *Farmer Enterprises, Inc. v. Gulf States Ins. Co.*, 940 S.W.2d 103, 111 (Tex. App.-Dallas 1996, no writ). "Notice of claim" means any notification in writing to an insurer, by a claimant, that reasonably apprises the insurer of the facts relating to the claim. Tex. Ins.Code Ann. art. 21.55, § 1(5). Mrs. Russell gave the notice of her claim to Tallent on February 11; therefore, we hold that PLIC received notice of her claim on February 11. Accordingly, the trial court did not err in beginning the accrual of article 21.55 damages on August 11, 1999, 180 days from February 11. PLIC's third issue is overruled.

### ACCRUAL OF PREJUDGMENT INTEREST

The trial court awarded Mrs. Russell $80,383.00 in prejudgment interest, which constituted six percent per annum on the $500,000.00 policy proceeds from April 14, 1999 through January 8, 2002, the date the final judgment was signed. In its fourth issue, PLIC contends that prejudgment interest does not begin to accrue until the earlier of (1) 180 days after the defendant received written notice of the claim or (2) the date suit was filed. *See Johnson & Higgins of Texas, Inc. v. Kenneco Energy,*

um; and adjusting a loss on behalf of an

*Inc.,* 962 S.W.2d 507, 531 (Tex.1998). PLIC also argues that the trial court erred in awarding Mrs. Russell prejudgment interest on the policy proceeds because of the lack of evidence in the record of the date PLIC received written notice of her claim.

■ We review a trial court's award of prejudgment interest under the abuse of discretion standard. *J.C. Penney Life Ins. Co. v. Heinrich,* 32 S.W.3d 280, 289 (Tex.App.-San Antonio 2000, pet. denied). Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and it failed to do so. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). However, "a trial court has no discretion in determining what the law is or applying the law to the facts." *Id.* at 840.

PLIC's reliance on *Johnson* is misplaced. In *Johnson,* the supreme court noted that there are two legal sources for an award of prejudgment interest: (1) general principles of equity, and (2) an enabling statute. *Johnson,* 962 S.W.2d at 528. When a judgment is obtained on a type of claim not specified by any of the statutes governing prejudgment interest, the court held that the common law provides that prejudgment interest accrues on the earlier of (1) 180 days after the date the defendant receives notice or (2) the date suit is filed. *Id.* at 531. None of the plaintiff's claims were of the type specifically enumerated by any of the prejudgment interest statutes; therefore, the court applied the common law prejudgment interest rule to that case. *Id.* at 530.

The instant case is different from *Johnson* because an enabling statute exists that mandates when prejudgment interest begins to accrue in cases where a contract

insurance company.

specifies the amount payable but not the interest rate. The version of section 302.002 of the Texas Finance Code in effect at the time Mrs. Russell made her claim to PLIC addresses such a claim and provides that

> [w]hen no specified rate of interest is agreed on by the parties, interest at the rate of six percent per year is allowed on all accounts and contracts ascertaining the amount payable, beginning on the 30th day after the date on which the amount is due and payable.[2]

TEX. FIN.CODE ANN. § 302.002 (Vernon 1998).

█ PLIC's policy did not specify an interest rate to be used in computing the interest payable when the policy proceeds are withheld following a claim. Mrs. Russell did not introduce any evidence of an interest rate agreed upon by the parties; therefore, section 302.002 governs prejudgment interest in this case. *See Marineau v. General American Life Ins. Co.*, 898 S.W.2d 397, 405 (Tex.App.-Fort Worth 1995, writ denied).

█ When a life insurance policy is at issue, the date from which the prejudgment interest is calculated begins thirty days after the date of the insured's death; the interest accrues until final judgment. *Id.; see also Teate v. Mutual Life Ins. Co. of New York*, 965 F.Supp. 891, 895 (E.D.Tex.1997). James Russell died on January 27, 1999. Consequently, the six-percent prejudgment interest began accruing on February 27, 1999 and ended on January 8, 2002, the date of the final judgment. Therefore, the total amount of prejudgment interest owed on the $500,000.00 policy proceeds is $85,972.60.[3]

PLIC's fourth issue is overruled; however, we modify the trial court's award of prejudgment interest to reflect an award of $85,972.60.

### ATTORNEYS' FEES

PLIC next argues that because Mrs. Russell was not entitled to recovery under the policy, she was not entitled to attorney's fees. We disagree.

█ The trial court awarded Mrs. Russell reasonable attorney's fees in the amount of $73,500.00, such amount to be reduced either by $33,000.00 in the event there is no appeal to the court of appeals, by $15,000.00 in the event no petition for review is filed in the supreme court, and by $12,000.00 in the event petition for review is denied by the supreme court. Article 21.55 allows the claimant to recover reasonable attorney's fees in addition to 18 percent of the amount of the claim as damages. TEX. INS.CODE. ANN. art. 21.55 (Vernon Supp.2002). We have held that PLIC violated article 21.55; therefore, Mrs. Russell was entitled to an award of attorney's fees as additional damages under article 21.55. PLIC's final issue is overruled.

### CONCLUSION

Mr. Russell's indication on PLIC's application that he was cancer-free was a representation. In order to avoid the policy based on Mr. Russell's alleged misrepresentation, PLIC had the burden to raise a fact issue on all of the elements of misrepresentation and failed to do so.

Regardless of Mr. Russell's representations, PLIC had a duty under article 21.55 to notify Mrs. Russell by May 6, 1999 (sixty business days from the date of re-

---

2. The new version of section 302.002 became effective on September 1, 1999. *See* Acts 1999, 76th Leg., ch. 62, § 7.18(a).

3. Calculated as follows: 1046 days × .06/365 × $500,000.00.

ceipt of the claim) that it received her claim and that her claim would be accepted or rejected or that it needed more time to make a decision. PLIC breached this duty by responding to Mrs. Russell's claim for the first time on June 29, 1999, which was 137 days after she submitted her claim. Therefore, Mrs. Russell was entitled to damages under article 21.55. Those damages began to accrue 180 days after she submitted her claim to PLIC's agent.

The accrual of prejudgment interest began on February 27, 1999, which was thirty days after Mr. Russell's death, instead of April 14 as determined by the trial court. Accordingly, we modify the trial court's judgment to award Mrs. Russell prejudgment interest of $85,972.60.

The judgment of the trial court is *modified,* and as modified, *affirmed.*